UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WALTER A. LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-0973 (RC) |
| | ) | |
| | ) | |
| PENSION BENEFIT GUARANTY | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff, proceeding *pro se*, challenges the decision of the Pension Benefit Guaranty Corporation ("PBGC") to deny his application for retirement benefits allegedly owed him from his employment with Shearson Hamill and Co., Inc., which merged with Lehman Brothers Holdings, Inc., in 1974. Contending that plaintiff was previously paid his benefits, PBGC moves to dismiss under Fed. R. Civ. P. 12(b)(6) [Dkt. # 7]. Plaintiff has filed two responses to the motion [Dkt. ## 9, 11] and PBGC has filed a reply [Dkt. # 10]. For the following reasons, the Court will grant defendant's motion and dismiss the case.

**I. BACKGROUND**

Plaintiff alleges that he was employed full-time as a Teletype Operator for 27 years, from May 1969 to 1996, when he retired at age 65. Compl. at 1. "Because of two separate accidents" in February 1979 and January 1980, plaintiff "sustained 2 different fractures . . . after which [he] developed arthritis in [his] elbow and wrist joints." *Id*. at 2. "[A]fter being in pain so much," plaintiff took short-term disability leave from November 1984 to May 1985 and thereafter took

1

long-term disability leave, which "accounts for a period of 7 months short term and about 11 years long term disability." *Id*.

In a decision dated August 24, 2011, PBGC's Appeals Board determined that plaintiff was not entitled to the requested retirement benefits because the records "PBGC's auditors obtained from the former Plan administrator" established that he had previously "received a lump-sum payment of $2,879.85 as a final distribution of your pension from the Lehman Brothers Plan." Compl. Attach. (hereafter "AB Dec."), ECF pp. 9-12. In support of that decision, PBGC provided plaintiff a Lehman Brothers memorandum dated November 9, 1993, from the Pension Department to Group Insurance, which stated that the lump-sum payment "effective November 1993" constituted "a final distribution for [plaintiff's] retirement plan." Compl. Ex. A. The memorandum further stated that "Mr. Lewis is presently on Long Term Disability. Please adjust his payments to reflect his retiree status." *Id*. In addition, PBGC provided plaintiff a letter dated December 13, 1993, to Lehman Brothers's insurance carrier, CIGNA Life Insurance Company of New York, stating the same. Compl. Ex. B; *see* AB Dec. at 1, 2.

In the instant complaint filed in June 2013, plaintiff states that he "cannot recall receiving [the] payment" -- purportedly distributed 20 years earlier -- and that he "ha[s] not signed anything to indicate that I did, even if I did not remember. I found it hard to believe that I would receive money from a corporation and not have to sign off on it." Compl. at 2-3. Plaintiff further states that "if a lump sum payment was received[,] can Lehman Brothers at least provide proof that the Mandatory tax deducted portions was [sic] at least disbursed to the IRS for that period the alleged 'final pension payment' was made?" *Id*. at 3. Plaintiff also questions how the lump-sum amount was calculated and faults PBGC for failing to maintain "my record in the plan." *Id*. at 4. He

concludes that "[e]ven though I do not have all my paperwork from all these years, under Title IV of the [ERISA], I believe I was denied the benefit of which I am entitled." *Id*. at 4-5.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g., United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678.

In deciding a motion to dismiss under Rule 12(b)(6), a court may not rely upon matters outside the pleadings without converting the motion to one for summary judgment, Fed. R. Civ. P. 12(d), but it can consider documents (as here) attached to the complaint as exhibits or incorporated

by reference and matters about which the court may take judicial notice without triggering the conversion requirement. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). In addition, the Court may consider "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab.Servs.*, 68 F. Supp. 2d 117, 119-20 (D.D.C. 2011) (citations and internal quotation marks omitted).

### III. ANALYSIS

#### A. The Statutory Framework

The Employee Retirement Income Security Act of 1974 ("ERISA") "is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983); *see also* 29 U.S.C. § 1001(b) (noting that ERISA was enacted "to protect . . . the interests of participants in employee benefit plans and their beneficiaries"). PBGC is a wholly owned United States corporation "established within the Department of Labor." 29 U.S.C. § 1302(a). Under Title IV of ERISA, PBGC is often appointed the statutory trustee to administer benefits when a private pension plan is terminated or lacks sufficient funds "to pay in full promised pension benefits." *Air Line Pilots Assoc. Int'l. v. PBGC*, 193 F. Supp. 2d 209, 211 (D.D.C. 2002); *see id*. at 211-12 (discussing ERISA's statutory framework). In this capacity, PBGC makes determinations about plan participants' benefits in accordance with the terms of the respective pension plan. *See* 29 U.S.C. § 1342(d)(1)(B); *Vanderkam v. PBGC*, 943 F. Supp. 2d 130, 137 (D.D.C. 2013).

PBGC guarantees "the payment of all nonforfeitable benefits" in which the participant was vested at the time of the plan's termination. 29 U.S.C. § 1322; *see West v. Greyhound Corp*., 813 F.2d 951, 954 (9th Cir. 1987). This guarantee "is applicable only to pension, stock bonus or

4

profit-sharing plans." *West*, 813 F.2d at 954 (citing 29 U.S.C. § 1321(a) (other citation omitted). ERISA "expressly exempts" from its coverage as to vesting and accrual "employee welfare benefit plans," *id*. (citing 29 U.S.C. § 1051), which encompass long-term disability plans. *See* 29 U.S.C. § 1002(1) (defining welfare plan); *Lopez v. Commonwealth Oil Refining Co., Inc.*, 833 F. Supp. 86, 88-89 (D. Puerto Rico 1993) (citing cases that "have found [] long term disability plans to be employee welfare benefit plans"). In other words, "[t]here is no language in ERISA which provides for the accrual of welfare benefits or guarantee that such benefits are vested or nonforfeitable." *West*, 813 F. 2d at 954; *see accord Finley v. Hoescht Celanese Corp.*, 941 F.2d 1206 (4th Cir. 1991) (per curiam) (unpublished table decision) ("While both types of plans are subject to ERISA's reporting and disclosure requirements . . . and its fiduciary standards for management of plan assets . . ., welfare benefit plans are not subject to ERISA's strict standards regarding vesting, participation and funding which are imposed on pension plans.").

Plan participants may challenge PBGC's determinations before the Appeals Board. *See* 29 C.F.R. §§ 4003.21, 4003.51. The Appeals Board decision "constitutes the final agency action by the PBGC with respect to the determination which was the subject of the appeal," *id*. § 4003.59(b), and it is subject to judicial review under the Administrative Procedure Act ("APA"). *See PBGC v. LTV Corp.*, 496 U.S. 633, 636 (1990); *Vanderkam*, 943 F. Supp. 2d at 137 (citing *Davis v. PBGC*, 864 F. Supp. 2d 148, 155 (D.D.C. 2012); *United Steel v. PBGC*, 839 F. Supp. 2d 232, 241 (D.D.C. 2012); *Air Line Pilots Assoc*, 193 F. Supp. 2d at 220-21)).

**B. APA's Standard of Review**

Under the APA, a court must set aside agency action as unlawful if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The "arbitrary and capricious" standard of review is a narrow one, and "a court is not

to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see accord Zevallos v. Obama*, No. 13-0390, --- F. Supp. 2d ---, 2014 WL 197864, at *5 (D.D.C. Jan. 17, 2014).

While a reviewing court must conduct a "searching and careful" review, the agency's action remains "entitled to a presumption of regularity," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), and the agency's decision should be upheld "so long as the agency 'engaged in reasoned decision making and its decision is adequately explained and supported by the record.' " *Clark County v. FAA*, 522 F.3d 437, 441 (D.C. Cir. 2008) (quoting *N.Y. Cross Harbor R.R. v. STB*, 374 F.3d 1177, 1181 (D.C. Cir. 2004)). "Indeed, nothing more than a 'brief statement' is necessary, as long as the agency explains 'why it chose to do what it did,' " and "the court can 'reasonably discern[]' the agency's path." *Coe v. McHugh*, 968 F. Supp. 2d 237, 240 (D.D.C. 2013) (quoting *Tourus Records, Inc. v. Drug*, 259 F.3d 731, 737 (D.C. Cir. 2001); *Pub. Citizen, Inc. v. F.A.A.*, 988 F.2d 186, 197 (D.C. Cir. 1993)) (alteration in original). As a general rule applicable to this case, a court's review of a benefits determination is limited to the record that was "available to the administrator or fiduciary at the time the decision was made." *Lee v. Hartford Life & Acc. Ins. Co.*, 928 F. Supp. 2d 51, 57 (D.D.C. 2013) (citations and internal quotation marks omitted).

**C.   PBGC's Decision**

The Lehman Brothers Plan terminated on December 12, 2008, without sufficient assets. AB Dec. at 2. PBGC looked to "the terms of the Plan, the provisions of ERISA, and PBGC regulations and policies . . . ." to make its decision about plaintiff's entitlement to benefits. *Id*. at 2. It relied upon the records that its auditors had obtained from the former Plan administrator and information provided by plaintiff's then-attorney, who supplied, *inter alia*, plaintiff's earnings

6

statements "from Shearson from 1969 to 1974 and from Lehman Brothers from 1974 through 1984." *Id*.

PBGC did not locate a "Lehman Brothers Plan document" applicable to participants who "terminated [their] employment prior to May 1, 1994," but the Board explained:

> [T]he Plan document amended and restated as of May 1, 1994 provides that, when the present value of a participant's retirement benefit does not exceed $3,500.00, it will be paid to him or her in a single lump-sum payment as soon as practicable following the participant's vested termination date. We concluded that the Lehman Brothers Plan provisions in effect when you terminated employment likely also provided a lump sum distribution [under the same circumstances]. Thus, a lump sum payment of $2,879.85 as a final distribution of your benefit appears to be consistent with the terms of the Lehman Brothers Plan.

*Id*. at 2-3.[1] In response to plaintiff's claim that he did not recall receiving the lump-sum payment, the Appeals Board reasonably found -- from the documents memorializing the lump-sum distribution and the language of the amended Plan -- that the "weight of the evidence" established that plaintiff had received the payment and that his contrary "statement [was] insufficient to rebut the clear statements" contained in the 1993 internal memorandum and letter to CIGNA. *Id*. at 3.

Plaintiff also claimed in his administrative appeal that his pension should not have terminated in November 1993 because he was required to reimburse Lehman Brothers for long-term disability payments that overlapped with disability payments the Social Security Administration had awarded him retroactively. AB Dec. at 3. The Board explained that PBGC was "responsible for the Lehman Brothers [Pension] Plan" only and that any claims arising from

---

[1] Presumably because plaintiff was not "actively employed" after November 1984, and the November 1993 documents referred to plaintiff's "retiree status," PBGC reasonably implies that plaintiff's employment ended before May 1, 1994. AB Dec. at 2. But plaintiff states in the complaint that he retired from Lehman Brothers in 1996. Compl. at 1. The administrative materials provide no clarity on this point. On a motion to dismiss, the Court is required to accept plaintiff's factual allegations as true. If indeed plaintiff retired in 1996, the 1994 amended Plan would apply directly to him.

7

plaintiff's long-term disability payments were beyond its reach since the pension plan and the long-term disability plan "were separate benefit programs that were independently administered." *Id*. This explanation comports with ERISA's coverage.

## CONCLUSION

For the foregoing reasons, the Court finds PBGC's decision to be reasonable and adequately supported. As such, PBGC's decision is neither arbitrary nor capricious, an abuse of discretion, nor otherwise not in accordance with law. Therefore, the Court grants defendant's motion and dismisses this case. A separate order accompanies this Memorandum Opinion.

_____/s/_____
RUDOLPH CONTRERAS
Date: May 8, 2014                                         United States District Judge